IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CURTIS R. KIMES,

        Plaintiff,                      No. CIV S-09-0853 KJM DAD PS

    v.

ERIK K. SHINSEKI, Secretary,
U.S. Department of Veterans Affairs,

        Defendant.                 FINDINGS AND RECOMMENDATIONS

/

This matter came before the court on July 16, 2010, for hearing of defendant's motion to dismiss plaintiff's first amended complaint. Plaintiff Curtis R. Kimes, who is proceeding pro se in this action, appeared on his own behalf. Attorney J. Earlene Gordon appeared for defendant. Oral argument was heard, and defendant's motion was taken under submission.

PLAINTIFF'S CLAIM

Plaintiff, a veteran, alleges that beginning in May of 2003 he complained to his Principal Care Provider ("PCP") at the Veterans Affairs ("VA") Clinic in Auburn, California of a minor sensation in his chest. Plaintiff's PCP ordered an x-ray, which was negative. Nevertheless, the sensation in plaintiff's chest progressed into a persistent discomfort.

/////

1

1   Eventually in late August of 2003, the discomfort transformed into an intense and debilitating
2   pain.
3          At 7:30 a.m. on Monday September 8, 2003, plaintiff telephoned the VA Clinic in
4   Auburn and requested an immediate appointment with his PCP.  Clinic Manager Huberty and
5   Staff Operator Anderson informed plaintiff that he would first have to speak with a triage nurse,
6   who was not available until later that day.  Eventually plaintiff contacted the triage nurse, but was
7   not scheduled to see his PCP for another two days thereafter.  When plaintiff finally saw his PCP,
8   the PCP only ordered that plaintiff receive Ibuprofen and Vicodin and even those pain
9   medications  were not delivered to plaintiff until September 15, 2003.
10         In October of 2003, plaintiff complained to his PCP that the prescribed pain
11  medications were ineffective.  Plaintiff continued to complain to his PCP, and to various
12  supervisory personnel at the VA Medical Center in Reno, that the prescribed pain medications
13  were ineffective.  In late December 2003, plaintiff's prescriptions for pain medication expired
14  and plaintiff's PCP refused to renew those prescription, telling plaintiff that she could not
15  provide him anymore help, despite the PCP's failure to initiate any treatment or procedure to
16  diagnose plaintiff's condition.  That same month plaintiff was informed that his care was being
17  transferred from the VA Clinic in Auburn, to another clinic.
18         During a January 30, 2004 visit to the VA Medical Center in Reno plaintiff sought
19  immediate medical attention at the clinic's triage station.  Plaintiff was put in a wheelchair and
20  eventually given an EKG.  It was determined that plaintiff's blood pressure was 184/92.  Plaintiff
21  requested further medical evaluation and pain medication, but those requests were denied
22  because VA triage staff would not act further without a referral from plaintiff's PCP.  In this
23  regard, triage staff informed plaintiff that because his chest pain had lasted longer than six
24  months it was a chronic condition requiring a referral from his PCP.  Plaintiff was finally
25  scheduled for an emergency appointment with his PCP on February 2, 2004.
26  /////

1    At 8:30 a.m. on February 2, 2004, plaintiff received a call from the VA Clinic in
2 Auburn.  Plaintiff was informed that his appointment, scheduled for later that day, had been
3 canceled, that his PCP, a Dr. Flaig, refused to continue as plaintiff's PCP, that no alternate PCP
4 would be named, that plaintiff's medical records had been removed from the clinic's computer
5 system and that plaintiff would have to receive future medical care at either the VA Medical
6 Center in Reno or the VA Medical Center in Sacramento.

7    On February 6, 2004, plaintiff received a phone call from the Patient Advocate for
8 the VA Medical Center in Reno, who advised plaintiff that a meeting had just ended and that
9 plaintiff's medical care at the VA Clinic in Auburn had been reestablished.  Plaintiff was also
10 informed that a teleconference was scheduled for February 23, 2004 to address plaintiff's
11 medical concerns and his assignment to his new PCP, an individual by the name Ashcraft.

12    On February 11, 2004, in response to extreme pain, the cause of which had still
13 yet to be diagnosed, plaintiff phoned the VA Under-Secretary for Health and spoke with
14 Executive Secretary Lil McDonald, who promised plaintiff that something would be done.  Later
15 that afternoon, the Patient Advocate for the VA Medical Center in Reno telephoned and
16 informed plaintiff that his previously prescribed pain medication would be delivered to the VA
17 Clinic in Auburn by 4:30 p.m. February 12, 2004.  Also on February 12, 2004, plaintiff received
18 a letter from the VA OIG Hotline Office, advising plaintiff that his concerns had been forwarded
19 to the VA Medical Center in Reno, from whom he would receive a direct reply.  However,
20 plaintiff never received a reply.

21    On March 9, 2004, plaintiff was denied a refill of his pain medication after
22 allegedly failing to attended a February 23, 2004 appointment with his newly assigned PCP.
23 Plaintiff's medical records do not show that he was ever scheduled for an appointment on
24 February 23 or February 27.  However, there is a note comment in the records stating, "Please
25 note that he was a no-show for an appointment on 2-27-04 that was specially to accommodate
26 him."

On March 17, 2004, plaintiff contacted the VA Clinic in Auburn to schedule an Urgent Care Appointment to obtain a refill of his pain medication and to request more effective pain medication. Plaintiff was informed by the clinic's Interim Manager that he could not schedule an Urgent Care Appointment because plaintiff already had an appointment scheduled with his PCP for April 14, 2004. On April 28, 2004, plaintiff was improperly diagnosed as suffering from costochondritis.[1] This diagnosis was made in the absence of any diagnostic testing or imaging. On February 17, 2005, however, a CT scan revealed that plaintiff was actually suffering from a chondrosarcoma.[2]

Plaintiff alleges that those involved in his medical care were negligent in failing to even attempt to diagnose the true origin of his persistent and observable pain prior to the February 17, 2005 CT scan. (First Am. Compl. (Doc. No. 26) at 3-8, 39.)[3]

PROCEDURAL HISTORY

Plaintiff filed his original complaint in this action on March 27, 2009. (Doc. No. 1.) After multiple status conferences concerning plaintiff's inadequate service of process, defendant was properly served and filed a motion to dismiss on March 16, 2010. (Doc. No. 19.) On April 8, 2010, plaintiff filed a motion for leave to amend his original complaint, (Doc. No. 21), as well as an opposition to defendant's March 16, 2010 motion to dismiss. (Doc. No. 22.) Defendant's motion to dismiss and plaintiff's counter-motion to amend were heard before the court on April 23, 2010. On April 27, 2010, defendant's March 16, 2010 motion to dismiss was granted and plaintiff was granted thirty days to file and serve an amended complaint. (Doc. No. 25.)

/////

---

[1] Costochondritis is an inflamation of the cartilage that connects a rib to the sternum.

[2] Chondrosarcoma is a type of bone cancer that affects cartilage cells.

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

On May 21, 2010, plaintiff filed his first amended complaint, alleging a claim of medical malpractice against defendant under the Federal Torts Claim Act ("FTCA"). ("First Am. Compl." (Doc. No. 26.))  Defendant filed the motion to dismiss now pending before the court on June 3, 2010. ("MTD" (Doc. No. 27.))  Plaintiff filed an opposition on July 2, 2010, ("Opp'n." (Doc. No. 28)), and defendant filed a reply on July 9, 2010. ("Reply" (Doc. No. 29.))

## ARGUMENTS OF THE PARTIES

In moving to dismiss, defendant first argues that this court lacks jurisdiction over plaintiff's claim because plaintiff has failed to allege exhaustion of his administrative remedies and because plaintiff's claim is barred by the FTCA's two-year statute of limitations. (MTD (Doc. No. 27-1) at 5-7.)  Defendant argues that plaintiff made two complaints concerning his alleged injuries, first to the VA's OIG Hotline on or before February 12, 2004 and then a second "Administrative Tort Claim" which was apparently filed on January 5, 2007. (Id. at 6.)  Defendant argues that plaintiff has not alleged that either of those complaints complied with the requirements of the FTCA, nor has plaintiff included a copy of his administrative complaints, showing a description of his claim and a sum certain for damages. (Id.)  Defendant argues further that even assuming plaintiff's tort claims complied with the FTCA's exhaustion requirements, the FTCA's two-year statute of limitations would bar any claim arising prior to January 5, 2005. (Id.)  Finally, defendant argues that plaintiff has failed to allege the necessary elements of a medical malpractice claim under California law. (Id. at 8.)  In this regard, defendant argues that plaintiff has not identified any medically recognized test that could have assisted in the accurate diagnosis of his condition prior to February 2005, that plaintiff has not provided the name of an individual who allegedly mis-diagnosed him and that plaintiff has not alleged that an earlier diagnosis of his condition would have resulted in a different medical outcome. (Id. at 9.)

In opposing defendant's motion, plaintiff asserts that he did in fact file an Administrative Tort Claim on January 5, 2007. (Opp'n. (Doc. No. 28) at 3.)  According to

5

plaintiff, that claim was denied by the VA's Regional Counsel on December 20, 2007. (Id.) Plaintiff states he then appealed the Regional Counsel's decision to the VA's General Counsel on April 11, 2008. (Id.) Moreover, plaintiff argues that the two-year statute of limitations on his medical malpractice claim did not begin to run until he learned of his actual condition in February 2005. (Id. at 5.) Finally, plaintiff argues that he has sufficiently stated a medical malpractice claim against defendant. (Id. at 6-10.)

In reply, defendant reasserts the arguments that plaintiff has failed to meet his burden of alleging that he exhausted his administrative remedies, that plaintiff's claim is barred by the applicable two-year statue of limitations and that plaintiff has failed to state a claim for relief. (Reply (Doc. No. 29) at 2-7.)

LEGAL STANDARDS APPLICABLE TO DEFENDANT'S MOTION

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense, by motion, that the court lacks jurisdiction over the subject matter of an entire action or of specific claims alleged in the action. "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

When a party brings a facial attack to subject matter jurisdiction, that party contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In a Rule 12(b)(1) motion of this type, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made. See Sea Vessel Inc. v. Reyes, 23 F.3d 345, 347 (11th Cir. 1994); Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir. 1990). The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1039 n. 1 (9th Cir. 2003),

1  Miranda v. Reno, 238 F.3d 1156, 1157 n. 1 (9th Cir. 2001).  Nonetheless, district courts "may
2  review evidence beyond the complaint without converting the motion to dismiss into a motion
3  for summary judgment" when resolving a facial attack.  Safe Air for Everyone, 373 F.3d at 1039.
4  　　　　　When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction
5  in fact, no presumption of truthfulness attaches to the plaintiff's allegations.  Thornhill Publ'g
6  Co., 594 F.2d at 733.  "[T]he district court is not restricted to the face of the pleadings, but may
7  review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the
8  existence of jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).  When
9  a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, plaintiff has
10  the burden of proving that jurisdiction does in fact exist.  Thornhill Publ'g Co., 594 F.2d at 733.
11  　　　　　The purpose of a motion to dismiss brought pursuant to Rule 12(b)(6) is to test the
12  legal sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th
13  Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of
14  sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901
15  F.2d 696, 699 (9th Cir. 1990).  The plaintiff is required to allege "enough facts to state a claim to
16  relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).
17  　　　　　In determining whether a complaint states a claim on which relief may be granted,
18  the court accepts as true the allegations in the complaint and construes the allegations in the light
19  most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.
20  United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In general, pro se complaints are held to less
21  stringent standards than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519,
22  520-21 (1972).  However, the court need not assume the truth of legal conclusions cast in the
23  form of factual allegations.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  The
24  court is permitted to consider material which is properly submitted as part of the complaint,
25  documents not physically attached to the complaint if their authenticity is not contested and the
26  /////

plaintiff's complaint necessarily relies on them, and matters of public record. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

ANALYSIS

I. Exhaustion of Administrative Remedies

Defendant argues that this action must be dismissed because the court lacks jurisdiction. Specifically, defendant contends that plaintiff "has not adequately alleged that he has exhausted his administrative remedies under the FTCA." (MTD (Doc. No. 27-1) at 5.)

The FTCA provides the exclusive remedy for "injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act of omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 2679(b)(1). The FTCA bars claimants from seeking damages against the United States in federal court until they have exhausted their administrative remedies. 28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S. 106, 113 (1993); Ibrahim v. Department of Homeland Sec., 538 F.3d 1250, 1258 (9th Cir. 2008); Jerves v. United States, 966 F.2d 517, 518-19 (9th Cir. 1992).

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). This exhaustion requirement is jurisdictional, and it must be strictly adhered to. Brady v. United States, 211 F.3d 499, 502 (9th Cir. 2000). The court is not allowed to proceed in the absence of a plaintiff's fulfillment of the FTCA's conditions merely because dismissal would visit a harsh result upon the plaintiff. Vacek v. U.S. Postal Service, 447 F.3d 1248, 1250 (9th Cir. 2006).

> For purposes of the provisions of . . . § 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property ...

28 CFR § 14.2. Thus, § "2675(a) requires the claimant or his legal representative to file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." Warren v. U.S. Dept. of Interior Bureau of Land Management, 724 F.2d 776, 780 (9th Cir. 1984) (en banc).

"But the prerequisite administrative claim need not be extensive. The person injured, or his or her personal representative, need only file a brief notice or statement with the relevant federal agency containing a general description of the time, place, cause and general nature of the injury and the amount of compensation demanded." Goodman v. United States, 298 F.3d 1048, 1055 (9th Cir. 2002). See also Warren, 724 F.2d at 779; Avery v. United States, 680 F.2d 608, 610 (9th Cir. 1982) ("[A] skeletal claim form, containing only the bare elements of notice of accident and injury and a sum certain representing damages, suffices to overcome an argument that jurisdiction is lacking."). Moreover, § 2675 imposes a minimal notice requirement, and "a plaintiff's administrative claims are sufficient even if a separate basis of liability arising out of the same incident is pled in federal court." Goodman, 298 F.3d at 1055. Finally, it has been recognized that "[t]he claim presentation requirement of the FTCA is designed to ensure that compensation is provided in a fair and equitable manner, not to provide a basis for a regulatory checklist which, when not fully observed, permits the termination of claims regardless of their merits." Blair v. I.R.S., 304 F.3d 861, 868 (9th Cir. 2002) (internal quotation omitted).

Here, plaintiff has alleged that he exhausted his administrative remedies as required under the FTCA. Specifically, plaintiff alleges that he filed an "Administrative Tort Claim" prior to the expiration of the two-year statute of limitations. (First. Am. Compl. (Doc.

9

No. 26) at 9.) Moreover, plaintiff has provided a letter from Alfred "Bron" Steinmetz, Staff Attorney for the Department of Veterans Affairs, Office of Regional Counsel, dated January 9, 2007, acknowledging the "receipt of the administrative tort claim" plaintiff "submitted alleging negligence" and stating that the "claim was received . . . on January 5, 2007." (Id. at 51.) That letter goes on to state:

> This office will conduct an inquiry into the facts and circumstances surrounding your claim. Specifically, we will evaluate all the evidence in light of the allegation of negligence.
>
> In order that we may properly evaluate the claim, we may ask that additional information be provided in the future. Pursuant to 28 U.S.C. § 2675(a), the Department of Veterans Affairs has six (6) months in which to make a final disposition of the claim before any civil action may be filed against the United States. We will, however, try to process this claim as soon as possible.

(Id.)

Moreover, plaintiff has provided the court with a copy of a December 2007 letter from Mark Romaneski, Regional Counsel for the Department of Veterans Affairs, Office of Regional Counsel, addressed to plaintiff and stating:

> The facts and circumstances surrounding the claim dated January 3, 2007, alleging the staff of the VA Sierra Nevada Health Care System ("VASNHCS"), Reno, Nevada and Auburn, California, were negligent in failing to timely diagnose your sternal chondrosarcoma and failing to offer alternative treatment options, have been thoroughly reviewed.
>
> The Federal Tort Claim Act, under which this claim was considered, provides that damages may be awarded when an injury is caused by the negligent or wrongful act or omission of a government employee acting within the scope of their employment. Based upon the results of our review of your claim, it cannot be concluded that the staff failed to meet the standard of good medical care, as you alleged. Chondrosarcoma is an uncommon tumor which is slowly expanding and difficult to diagnose. The average duration of symptoms for this type of cancer prior to diagnosis is one to two years. Your first complaint was in April 2003, and you were diagnosed in February 2005. Therefore, your diagnosis was within the standard of care. After the diagnosis, you were presented with an appropriate and standard method of treatment. The delay in treatment after diagnosis was due to your desire for an

alternative treatment plan. Accordingly, this claim must be denied.
/////

> If you are dissatisfied with our decision, you may file a request for reconsideration of this claim with the VA General Counsel . . .

(Id. at 53.)

Plaintiff has further alleged that he filed a request for reconsideration with the VA General Counsel. (Id. at 10.) In support of this claim, plaintiff has provided the court with a copy of an April 30, 2008 letter addressed to plaintiff from Deputy Assistant General Counsel, Kathryn Simpson, of the Department of Veterans Affairs, Office of the General Counsel, that states:

> This is to acknowledge receipt of your letter on April 11, 2008, requesting reconsideration of your administrative tort claim that was previously denied by the Phoenix, Arizona Department of Veterans Affairs (VA) Regional Counsel.
>
> ***
>
> We have requested the Regional Counsel's files on this claim, and we will begin our reconsideration when those files are received. While this will be accomplished as expeditiously as possible, you are advised that the Attorney General's regulations provide an agency 6 months to reconsider a claim, during which time your right to file suit on the claim is suspended. Thereafter, you may either deem the claim denied by filing suit in Federal district court, or await an agency decision on the claim.

(Id. at 56.)

Plaintiff has also provided an October 14, 2009 letter from Assistant General Counsel, E. Douglas Bradshaw, Jr., of the Office of the General Counsel informing plaintiff that the office received notice that plaintiff had filed this action "concerning your administrative tort claim currently in this office for reconsideration."[4] (Id. at 58.) The letter concludes, "Accordingly, the claim is hereby denied."

Plaintiff has alleged that he exhausted his administrative remedies under the

---

[4] Plaintiff filed this action afer awaiting the Office of General Counsel's reconsideration of his administrative claim for nearly a year.

11

1  FTCA.  Moreover, he has provided significant evidence to support that allegation.  Defendant
2  argues that plaintiff's allegation fails to meet his burden on this issue because he has not
3  specifically alleged that his claim conformed to the specific requirements of the FTCA.  (MTD.
4  (Doc. No. 27-1) at 6.)  However, in opposing defendant's motion, plaintiff explicitly asserts that
5  he "provided the agency with written notice" of his claim and "placed a value on his claim."
6  (Opp.'n. (Doc. No. 22) at 7.)

7  In reply, defendant argues that there is "no information from which defendant can
8  ascertain what specific claims were presented to the VA . . . ."  (Reply (Doc. No. 29) at 3.)  The
9  December 2007 letter from Department of Veterans Affairs Office of Regional Counsel, which
10 plaintiff has provided as part of his first amended complaint, however explicitly states that
11 plaintiff alleged in his January 2007 claim that "the VA Sierra Nevada Health Care System
12 ("VASNHCS"), Reno, Nevada and Auburn, California, were negligent in failing to timely
13 diagnose [plaintiff's] sternal chondrosarcoma . . . ."  (First Am. Compl. (Doc. No 26) at 53.)
14 This is precisely what plaintiff has alleged in this action.[5]

15 The court finds that plaintiff has adequately alleged that he exhausted his
16 administrative remedies under the FTCA.  Furthermore, plaintiff has come forward with
17 significant evidence supporting that allegation.  In contrast, defendant has offered no persuasive
18 argument or significant evidence to rebut plaintiff's allegation or evidence.  All that is before the
19 court is plaintiff's adequate allegation of exhaustion together with supporting evidence
20 persuasive on that point.  Accordingly, defendant's motion to dismiss for failure to adequately

---

[5] Defendant does not argue that plaintiff did not in fact file an appropriate administrative claim, but merely that he has not provided a copy of the form he submitted.  However, federal regulations state that where a suit has been instituted against the government "the General Counsel in Central Office, or the Regional Counsel for the field facility . . . shall determine the action to be taken with respect" to requests by claimant for documents.  38 CFR § 1.511. Moreover, "[w]here a claim under the provisions of the Federal Tort Claims Act has been filed . . . no information, documents, reports, etc., will be disclosed except through the Regional Counsel having jurisdiction . . . ."  (Id.)  It would thus appear that defendant has the ability to determine whether plaintiff did in fact exhaust his administrative remedies, since it appears defendant possesses or should possess a copy of plaintiff's claim.

allege exhaustion of administrative remedies should be denied.

II. <u>Statute of Limitations</u>

Defendant argues that the FTCA's two-year statute of limitations bars plaintiff's claim. Specifically, defendant argues that because plaintiff filed his "Tort Claim" with the VA Office of Regional Counsel on January 5, 2007, any claim arising prior to January 5, 2005, is barred by the FTCA's two-year statute of limitations. (MTD (Doc. No. 27-1) at 7.) Defendant contends that there are no allegations in plaintiff's first amended complaint referring to any specific negligent act of the defendant occurring after January 5, 2005, and therefore plaintiff's complaint is time barred. (<u>Id</u>.)

The FTCA's statute of limitations provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). <u>See also</u> <u>Winter v. United States</u>, 244 F.3d 1088, 1090 (9th Cir. 2001); <u>Dyniewicz v. United States</u>, 742 F.2d 484, 485 (9th Cir. 1984).

"A claim accrues when a plaintiff knows that he has been injured and who has inflicted the injury." <u>Winter</u>, 244 F.3d at 1090 (citing <u>United States v. Kubrick</u>, 444 U.S. 111, 122-23 (1979). Accrual of a claim does not "await awareness by a plaintiff that his injury has been negligently inflicted." <u>Kubrick</u>, 444 U.S. at 123. While the general rule in tort law is that the claim accrues at the time of the plaintiff's injury, "[i]n the area of medical malpractice this has been felt to be unduly harsh in those cases where the fact of injury remains undisclosed." <u>Davis v. United States</u>, 642 F.2d 328, 330 (9th Cir. 1981). For medical malpractice claims under the Federal Tort Claims Act, a claim "accrues when the plaintiff discovers both the existence and cause of his injury." <u>Augustine v. United States</u>, 704 F.2d 1074, 1077-78 (9th Cir. 1983) (citing <u>Kubrick</u>, 444 U.S. at 119-22).

1  Here, plaintiff alleges that defendant is liable for medical malpractice for failing to
2 timely diagnose his sternal chondrosarcoma. Plaintiff alleges that he was improperly diagnosed
3 as suffering from costochondritis in April of 2004.[6] Plaintiff was not made aware that he was in
4 fact afflicted with chondrosarcoma until February of 2005. Plaintiff therefore could not have
5 known that he was improperly diagnosed until he was properly diagnosed in February of 2005.
6 Plaintiff, therefore, did not have knowledge of his injury until February of 2005. As discussed
7 above, plaintiff has alleged that he presented this claim in writing to the Department of Veterans
8 Affairs, Office of Regional Counsel, in January of 2007, prior to the expiration of the two-year
9 statute of limitations.

10  Defendant argues that plaintiff has also alleged that the VA was negligent in
11 managing his pain and for moving his care from the Auburn VA facility. (Reply (Doc. No. 29) at
12 3-4.) If plaintiff were to assert those complaints as claims independent of the failure to timely
13 diagnose his chondrosarcoma, defendant would be correct in arguing that such claims would be
14 barred by the two-year statute of limitations. However, construed liberally, here plaintiff has
15 alleged that despite his repeated complaints, defendant committed medical malpractice by failing
16 to timely diagnose his chondrosarcoma and that evidence of that malpractice can be seen in the
17 failure of medical personnel to take plaintiff's complaints of pain seriously, in the inconsistent
18 prescribing of inadequate pain medication, in the VA's decision to haphazardly relocate
19 plaintiff's place of care, and in the failure to administer any diagnostic testing despite plaintiff's
20 repeated complaints of pain. As noted above, Plaintiff's medical malpractice claim is not barred
21 by the statute of limitations.

22  Accordingly, for the reasons stated above, defendant's motion to dismiss
23 plaintiff's complaint as barred by the applicable statute of limitations should be denied.

---

25  [6] Indeed, it appears from the medical records provided by plaintiff that he was diagnosed as suffering from costochondritis, as early as sometime in 2003. (First. Am. Compl. (Doc. No
26 26) at 30.)

14

III. <u>Failure to State a Claim</u>

Defendant argues that plaintiff has failed to state a cognizable claim for relief. Specifically, defendant argues that plaintiff has not identified any medically recognized diagnostic test which could have assisted in the earlier diagnosis of his condition, that he has not provided the name of the individuals who allegedly mis-diagnosed him, and that plaintiff has not alleged that an earlier diagnosis would have resulted in a different medical treatment outcome. (MTD. (Doc. No. 27-1) at 8-9.)

The Federal Tort Claims Act ("FTCA") provides a remedy for individuals seeking relief against federal actors for tort claims. 28 U.S.C. § 1346. "[T]he United States is the only proper party defendant in an FTCA action." <u>Kennedy v. U.S. Postal Service</u>, 145 F.3d 1077, 1078 (9th Cir. 1998) "The FTCA specifies that the liability of the United States is to be determined 'in accordance with the law of the place where the [allegedly tortious] act or omission occurred.'" <u>Rhoden v. United States</u>, 55 F.3d 428, 430 (9th Cir. 1995) (quoting 28 U.S.C. § 1346(b)). " Under the FTCA, the question of liability is determined with reference to state law." <u>Doggett v. United States</u>, 875 F.2d 684, 686 (9th Cir. 1989). See <u>Richards v. United States</u>, 369 U.S. 1, 11 (1962) ("Thus, we conclude that a reading of the statute as a whole, with due regard to its purpose, requires application of the whole law of the State where the act or omission occurred."); <u>Taylor v. United States</u>, 821 F.2d 1428, 1433 (9th Cir. 1987) ("The extent of the government's liability is a matter of federal law (28 U.S.C. §§ 1346(b), 2674), albeit determined according to state standards.").

Under California law, the elements for professional negligence, such as medical malpractice, are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." <u>Turpin v. Sortini</u>, 31 Cal.3d 220, 229-30 (1982).

15

The general rule applicable to medical practice cases is:

> The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations], unless the conduct required by the particular circumstances is within the common knowledge of the layman. The "common knowledge" exception is principally limited to situations in which the plaintiff can invoke the doctrine of res ipsa loquitur, i.e., when a layperson is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised. The classic example, of course, is the X-ray revealing a scalpel left in the patient's body following surgery. Otherwise, expert evidence is conclusive and cannot be disregarded.

Flowers v. Torrance Memorial Hospital Medical Center, 8 Cal.4th 992, 1001 (Cal. 1994). "When the physician-patient relationship exists, either expressed or implied, the patient has a right to expect the physician will care for and treat him with proper professional skills and will exercise reasonable and ordinary care and diligence toward the patient. Keene v. Wiggins, 69 Cal. App.3d 308, 313 (1977) "What is or what is not proper practice on the part of the physician is uniformly a question for experts and can be established only by the testimony of such experts." Sansom v. Ross-Loos Medical Group, 57 Cal. App.2d 549, 553 (1943).

Moreover, in a tort action, such as the present one, "causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case." Jones v. Ortho Pharmaceutical Corp., 163 Cal. App.3d 396, 402-03 (1985). See also Gotschall v. Daley, 96 Cal. App.4th 479, 484 (2002) ("[E]xpert testimony was essential to prove causation. Without testimony on causation, plaintiff failed to meet his burden on an essential element of the cause of action.") "In California, causation must be founded upon expert testimony and cannot be inferred from the jury's consideration of the totality of the circumstances unless those circumstances include the requisite expert testimony on causation." Cottle v. Superior Court, 3 Cal. App.4th 1367, 1384 (1992).

Here, plaintiff has alleged that medical personnel employed by the defendant "negligently failed to . . . exercise knowledge and skill in caring for plaintiff" despite evidence of plaintiff's "worsening condition" and complaints of pain, which caused plaintiff to suffer injury. (First Am. Compl. (Doc. No. 26) at 2.) In this regard plaintiff alleges that defendant failed to "apply reasonable judgment and care toward the proper treatment and early diagnosis of plaintiff's condition." (Id.) Plaintiff recounts his version of the medical care he received between May of 2003 and February of 2005 and why he believes it constituted malpractice. For example, plaintiff alleges that on September, 8, 2003, he spoke with the triage nurse at the VA Clinic in Auburn in response to his "incredibly intense, debilitating pain," and was referred to his PCP. (Id. at 3.) Two days later his PCP "only ordered Ibuprofen and Vicodin." (Id.) In support of his claim, plaintiff has attached to his complaint copies of his medical records indicating that on September 8, 2003, he did in fact speak with someone and complained of "right rib pain that sometimes goes to the left side." (Id. at 16.) The court may properly consider these attachments as part of the complaint. See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment."); Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (district court should consider attachments to a complaint to be part of the complaint in deciding a motion to dismiss for failure to state a claim).

The attached medical records also indicate that plaintiff will see "Dr. Flaig . . . on Wed am at 9." (Id.) Plaintiff further alleges as follows. He continued to complain of pain, yet his "PCP failed to initiate any treatment, procedure, or service considered medically necessary" and that this failure resulted in plaintiff's continued pain and "obviated any diagnostic resolution" of his condition. (Id. at 4.) In December of 2003 he was informed that his medical care was being transferred from the VA Clinic in Auburn. Medical records indicate that on December 24, 2003, "[p]er Dr. Flaig's request, pt was called to notify him that his care was

17

transferred to Mather or Reno." (Id. at 21.) Medical records also fail to document the "refusal by Boutillier to consider any discussion of patient complaints . . ." (Id. at 6.) Moreover, medical records support the allegation that he was "improperly" diagnosed as suffering from costochondritis "in the absence of any medically recognized diagnostic testing/imaging to confirm" that diagnosis. (Id. at 8.) Medical records demonstrate defendant's "negligent failure of any attempt to diagnose the true origin of [a] persistent, observable, painful condition," a chondrosarcoma, which was only "discovered by CT-scan–a result of patient's . . . adamant 'request' of PCP for a 'specialist appointment.'" (Id. at 8.) Finally, as a result of defendant's negligence plaintiff suffered pain, physical impairment, disfigurement, and economic damages. (Id. at 12.)

While the success of plaintiff's claim may ultimate depend upon expert testimony, in determining whether a complaint states a claim on which relief may be granted, the court must accept as true the allegations in the complaint and construe those allegations in the light most favorable to the plaintiff. Moreover, as noted above, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Liberally construed, plaintiff's complaint states a cognizable claim for relief for medical malpractice under California law. See Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (on a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.") (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Accordingly, defendant's motion to dismiss for failure to state a cognizable claim for relief should be denied.

CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY RECOMMENDED that:

/////

1. Defendant's June 3, 2010 motion to dismiss (Doc. No. 27) be denied; and

2. Defendant be directed to file an answer within thirty days.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections.[7] The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 9, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
orders.pro se/kimes853.MTD

---

[7] Plaintiff is advised that, while he may elect to file a reply, the filing of a reply is not mandatory.